UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| TERRY MERRICK, ) | |
| ) | |
| Plaintiff, ) | Case No. 08-00998 AJW |
| ) | |
| v. ) | AMENDED |
| ) | MEMORANDUM OF DECISION |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of the Social ) | |
| Security Administration, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

Plaintiff filed this action seeking reversal of the decision of defendant, the Commissioner of the Social Security Administration (the "Commissioner"), denying plaintiff's applications for disability insurance benefits and supplemental security income benefits. The parties have filed a Joint Stipulation ("JS") setting forth their contentions with respect to each disputed issue.

**Administrative Proceedings**

The parties are familiar with the procedural facts, which are summarized in the Joint Stipulation. [See JS 2]. The Administrative Law Judge ("ALJ") denied benefits in an April 2007 written hearing decision that constitutes the Commissioner's final decision. [Administrative Record ("AR") 16-23; JS 2]. The ALJ found that plaintiff had severe impairments consisting of L5-S1 disc degeneration with shallow spondylotic ridge, no crossing or exiting nerve root compression, and mild facet arthrosis; mild central canal narrowing at L4-L5 secondary to diffuse annular bulge; and mild diffuse annular bulge at L3-L4 with no crossing or

existing nerve root compression and normal facet joints. [AR 18; JS 2]. The ALJ found that plaintiff retained the residual functional capacity ("RFC") to perform medium work, but has "difficulty with the right elbow with repetitive motions." [AR 19]. The ALJ denied benefits on the ground that plaintiff's RFC does not preclude performance of her past relevant work as a teacher's aide and mail carrier. [AR 22; JS 2].

## Standard of Review

The Commissioner's denial of benefits should be disturbed only if it is not supported by substantial evidence or is based on legal error. Stout v. Comm'r Social Sec. Admin., 454 F.3d 1050, 1054 (9th Cir. 2006); Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002). "Substantial evidence" means "more than a mere scintilla, but less than a preponderance." Bayliss v. Barnhart, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005). "It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005)(internal quotation marks omitted). The court is required to review the record as a whole and to consider evidence detracting from the decision as well as evidence supporting the decision. Robbins v. Soc. Sec. Admin, 466 F.3d 880, 882 (9th Cir. 2006); Verduzco v. Apfel, 188 F.3d 1087, 1089 (9th Cir. 1999). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." Thomas, 278 F.3d at 954 (citing Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir.1999)).

## Discussion

**Medical opinion evidence**

Plaintiff contends that the ALJ erroneously rejected the opinion of plaintiff's treating physicians, Dr. Sobol and Dr. Paveloff, in favor of the opinion of a consultative physician, Dr. Boeck. [See JS 8-27].

In general, "[t]he opinions of treating doctors should be given more weight than the opinions of doctors who do not treat the claimant." Orn v. Astrue, 495 F.3d 625, 632 (9th Cir. 2007)(citing Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998)); see Tonapetyan v. Halter, 242 F.3d 1144, 1148 (9th Cir. 2001). A treating physician's opinion is entitled to greater weight than those of examining or nonexamining physicians because "treating physicians are employed to cure and thus have a greater opportunity to know and observe the patient as an individual . . . ." Edlund v. Massanari, 253 F.3d 1152, 1157 (9th Cir. 2001) (quoting Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996) and citing Social Security Ruling ("SSR") 96-2p, 1996 WL 374188); see 20 C.F.R. §§ 404.1502, 404.1527(d)(2), 416.902, 416.927(d)(2). An

2

examining physician's opinion, in turn, generally is afforded more weight than a nonexamining physician's opinion. Orn, 495 F.3d at 631.

When a treating physician's medical opinion as to the nature and severity of an individual's impairment is well-supported and not inconsistent with other substantial evidence in the record, that opinion must be given controlling weight. Orn, 495 F.3d at 631-632; Edlund, 253 F.3d at 1157; SSR 96-2p, 1996 WL 374188, at *1-*2. The ALJ must provide clear and convincing reasons, supported by substantial evidence in the record, for rejecting an uncontroverted treating source opinion. If contradicted by that of another doctor, a treating or examining source opinion may be rejected for specific and legitimate reasons that are based on substantial evidence in the record. Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2004); Tonapetyan, 242 F.3d at 1148-1149; Lester v. Chater, 81 F.3d 821, 830-831 (9th Cir. 1995).

Plaintiff was treated by Dr. Sobol, an orthopedist, and his colleague, Dr. Paveloff, a specialist in physical medicine and rehabilitation, from June 2004 until at least February 21, 2007, the date of the ALJ hearing. The record includes treatment reports covering the period from June 2004 through November 2006. [See AR 146-230, 267-316, 321, 328-329].

Plaintiff alleges that her disability began in May 2005. She initially sought treatment from Dr. Sobol in June 2004 for neck pain radiating into the left upper extremity, pain in the middle and low back, bilateral knee pain and swelling, and occasional buckling of her knee. [AR 182-190]. She reported that she had injured her back and knees at work in two separate falls sustained in May and June 2003. [AR 182]. She had undergone physical therapy and had returned to work with restrictions, but she told Dr. Sobol that her symptoms were getting worse, prompting her to seek additional treatment.

Dr. Sobol conducted an examination, and he ordered x-rays and electrodiagnostic studies. He also requested prior x-rays and MRI films for review. [AR 187]. Dr. Sobol's initial diagnoses were cervical/trapezial musculoligamentous sprain/strain with attendant left upper extremity radiculitis, thoracolumbar musculoligamentous sprain/strain, and bilateral knee contusion with patellofemoral arthralgia. [AR 187]. Dr. Sobol's treatment plan included aquatic therapy, acupuncture treatment, analgesic and anti-inflammatory medication, a cervical pillow, and a home electrical muscle stimulation unit for pain management. [AR 187]. He later added a course of cervical traction therapy, a home cervical traction

device, and, after obtaining MRI scans of the lumbar and cervical spine, a series of cervical epidural steroid injections, which were beneficial. [AR 272]. Dr. Sobol concluded that plaintiff was temporarily totally disabled as of June 11, 2004.[1] [AR 188].

In July, August, and September 2004, Dr. Sobol completed or approved State of California Workers' Compensation reports entitled "Primary Treating Physician's Progress Report" detailing plaintiff's subjective complaints, objective findings, diagnoses, and treatment plan. [AR 210-212]. He indicated that she was to remain off work until September 20, 2004, when he stated that he was capable of returning to modified work four hours a day, five days a week that did not involve heavy lifting, forceful pushing or pulling, climbing, or kneeling. [AR 210]. Plaintiff attempted a return to her job as a teacher's aide.. [AR 208-209, 327]. In October 2004, Dr. Sobol recommended that plaintiff continue on a four hour per day/five day a week schedule with no forceful pushing or pulling, climbing, or kneeling. These restrictions were to continue until October 18, 2004, at which time plaintiff could begin a trial period of working eight hours a day with the same restrictions. [AR 209-210]. On October 25, 2004, plaintiff reported that her symptoms had worsened since returning to work and that her pain medications were not helping. [AR 208; see AR 327]. Dr. Sobol advised reducing her daily work schedule back to four hours with the same restrictions. Beginning in November 2004, Dr. Sobol took plaintiff off work completely until April 11, 2005, when he authorized her to "[r]eturn to full and usual customary duty." [AR 229; see AR 207, 219-221, 229-230]. Plaintiff testified that she returned to her job as a teacher's aide for about a month "because I wanted to see if I could do it," but her back and leg problems prevented her from working. [AR 340]. Plaintiff stopped working on May 9, 2005.

---

[1] In California workers' compensation parlance, a "period of temporary total disability" means "that period when the employee is totally incapacitated for work and during which he may reasonably be expected to be cured or materially improved with proper medical attention." W. M. Lyles Co. v. Workmen's Comp. Appeals Bd., 3 Cal.App.3d 132, 136 (1969)); see Rissetto v. Plumbers & Steamfitters Local 343, 94 F.3d 597, 600, 605 (9th Cir. 1996)(stating that an individual is "temporarily totally disabled" under California workers' compensation law if that individual is "totally incapacitated" and "unable to earn any income during the period when he is recovering from the effects of the injury," and that a claimant who applies for temporary total disability benefits "necessarily assert[s] that she [is] unable to work") (internal quotation marks and citations omitted).

On May 26, 2005, Dr. Sobol completed an "Orthopedic Permanent and Stationary Report."[2] [AR 157, 188-189, 207, 211-212, 268-278]. In that report, Dr. Sobol's diagnoses were:

1. Cervical/trapezial musculoligamentous sprain/strain with attendant left upper extremity radiculitis with severe left neuroforaminal narrowing at C3-C4 impinging the left C4 nerve root, left neuroforaminal narrowing at C4-C5 and right paracentral disc protrusion at C5-C6 resulting in mild central canal spinal stenosis and right neuroforaminal narrowing impinging the right C6 nerve root, per MRI study dated April 9, 2004

2. Thoracolumbar musculoligamentous sprain/strain, with multilevel disc desiccation and moderate loss of disc height at L5-S-1, mold central canal narrowing secondary to a diffuse disc bulge with facet and ligamentum flavum hypertrophy at L4-L5 and a mild disc bulge at L3-L4, per MRI study dated August 17, 2004, and

3. Bilateral knee contusion and patellofemoral arthralgia.

[AR 271].

Dr. Sobol detailed the subjective and objective "factors of permanent disability" that he relied upon to support his opinion. [AR 273-274]. He noted that plaintiff had returned to her regular duties, had a "strong desire to continue working in this capacity," and had demonstrated an ability to continue working with "self-modification of her duties," making work restrictions and vocational rehabilitation unnecessary at the time of his report. [AR 274-276]. Nonetheless, Dr. Sobol opined that plaintiff would require future medical care. He also concluded that due to the residual effects of her neck and back injuries, plaintiff had lost approximately 25% of her pre-injury capacity for lifting, moving, posturing, pushing, pulling, lifting, bending, stooping, and other activities of comparable effort, and that on account of her residual bilateral knee problems, she had lost approximately 15 to 20% of her pre-injury capacity for kneeling, squatting, crouching, crawling, and climbing. [AR 274-275]. He noted that if plaintiff became unable to continue in her customary job as a teacher's assistant, vocational rehabilitation should be considered. [AR 276].

---

[2] A disability is considered "permanent and stationary" for California workers' compensation purposes "after the employee has reached maximum medical improvement or his or her condition has been stationary for a reasonable period of time." Gangwish v. Workers' Compensation Appeals Bd., 89 Cal.App.4th 1284,1290 n.7 (2001) (quoting Cal.Code Regs., tit. 8, § 10152).

|     |     |
| --- | --- |
| 1 | Plaintiff remained symptomatic, and she returned to see Dr. Sobol or Dr. Paveloff for treatment in July and August 2005, when Dr. Paveloff opined that plaintiff should remain off work for four to six weeks. Plaintiff, however, apparently was not working at that point. [See AR 47, 340]. Dr. Paveloff recommended a facet block injection, and plaintiff agreed. [AR 223-224, 299]. Before she could undergo one, however, plaintiff slipped and fell on a floor at Daniel Freeman Hospital while visiting her mother, injuring her elbows and wrists, and exacerbating her pre-existing back and knee problems. Drs. Sobol and Paveloff prescribed chiropractic manipulation, physical therapy, Tylenol #3 and Motrin as needed, and Biofreeze analgesic ointment. [AR 146-155, 223, 299]. |

Plaintiff remained symptomatic, and she returned to see Dr. Sobol or Dr. Paveloff for treatment in July and August 2005, when Dr. Paveloff opined that plaintiff should remain off work for four to six weeks. Plaintiff, however, apparently was not working at that point. [See AR 47, 340]. Dr. Paveloff recommended a facet block injection, and plaintiff agreed. [AR 223-224, 299]. Before she could undergo one, however, plaintiff slipped and fell on a floor at Daniel Freeman Hospital while visiting her mother, injuring her elbows and wrists, and exacerbating her pre-existing back and knee problems. Drs. Sobol and Paveloff prescribed chiropractic manipulation, physical therapy, Tylenol #3 and Motrin as needed, and Biofreeze analgesic ointment. [AR 146-155, 223, 299].

Dr. Paveloff and Dr. Sobol submitted statements to the Employment Development Department ("EDD") stating that plaintiff was unable to perform her regular duties from November 22, 2005 until May 20, 2006. [AR 62-65]. In October 2006, Dr. Sobol issued a new permanent and stationary report with expanded, detailed diagnoses similar to those in his May 2005 permanent and stationary report, as well as new diagnoses pertaining to the aggravation of plaintiff's right knee symptoms, post left knee contusion, and flare-up of low back and left knee symptoms attributable to her September 2005 slip and fall. [AR 303-304]. Dr. Sobol opined that plaintiff had additional disability due to her new injury and worsening of her prior orthopedic conditions. Dr. Sobol assessed plaintiff with impairments of the cervical, thoracic, and lumbar spine, bilateral knees, and "pain-related impairment" amounting, in combination, to a "whole person impairment" of 36%. [AR 309-311]. He concluded that plaintiff had lost approximately 25% of her preinjury capacity for lifting, posturing or moving of the head and neck, pushing, pulling or other activities of comparable physical effort. [AR 308]. Dr. Sobol advised the following prophylactic work restrictions, taking into account all of plaintiff's neck, back, and extremity impairments: a preclusion from activities requiring heavy lifting, repetitive bending and stooping, prolonged weight-bearing, repetitive climbing, walking over uneven ground, squatting, kneeling, crouching, crawling, pivoting or other activities involving comparable physical effort. [AR 308-309]. He stated that if plaintiff or her employer were unable to modify her regular duties consistent with the prophylactic work restrictions described above, "she will be considered medically eligible for vocational rehabilitation due to the extent of bending, stooping, kneeling, and squatting previously described by [plaintiff]." [AR 314].

In support of his disability rating, Dr. Sobol enumerated the following objective "factors of

6

1 permanent disability," which were described in more detail in the body of his report: (1) abnormal cervical
2 spine MRI study indicative of nerve root impingement dated April 9, 2004; (2) abnormal cervical spine x-
3 rays dated February 16, 2004; (3) limited range of motion of the cervical, lumbar, and thoracic spine; (4)
4 localized neck pain with Axial Compression Test; (5) guarding of the cervical, lumbar, and thoracic
5 paraspinal muscles; (6) abnormal somatosensory evoked potential study of the bilateral upper extremities
6 dated December 27, 2004; (7) abnormal lumbar spine MRI study dated August 17, 2004; (8) abnormal
7 lumbar spine x-rays dated June 23, 2003; (9) positive straight-leg raising test eliciting radiating pain to the
8 right buttock; (10) abnormal x-rays of the bilateral knees; (11) abnormal right knee MRI study dated January
9 21, 2006; (12) limited bilateral knee flexion; (13) patellofemoral crepitus with passive ranging of both knees;
10 (14) pain without click with McMurray's test, left knee[3]; and (15) pain and click with McMurray's test, right
11 knee. [AR 306-307].

12 The ALJ noted that Dr. Sobol and Dr. Paveloff had opined that plaintiff was disabled from
13 performing her customary work as a teacher's aide from November 2005 until May 20, 2006. [AR 20]. The
14 ALJ also "acknowledge[d] the assessments of treating physicians [Dr. Paveloff and Dr. Sobol] that [plaintiff]
15 has serious limitations related to the ability to perform work activities." [AR 21]. The ALJ, however,
16 rejected both treating physicians' opinions because (1) they "appear to have taken [plaintiff's] subjective
17 allegations at face value and merely reiterated those allegations when making assertions regarding [her]
18 health and functional capacity," and (2) "they have not provided an assessment of [plaintiff's] residual
19 functional capacity that is consistent with the record as a whole." [AR 21]. The ALJ added that even if he
20 credited the assessments of Drs. Paveloff and Sobol, "neither of these physicians has indicated that [plaintiff]
21 has impairments which would render her unable to perform work activities for at least twelve months." [AR
22 18].

23 The reasons given by the ALJ for rejecting the opinions of Drs. Sobol and Paveloff are not legitimate

---

[3] To perform the McMurray's test, the knee is flexed, pressure is applied to an aspect of the knee to displace a torn meniscus into the joint, then pressure is applied to a different aspect the knee while the knee is slowly extended. A positive result occurs when pain and/or a "click" or "pop" occurs during extension, and is significant for injury to the posterior or middle segment of the medial or lateral meniscus in the knee. See 2 Dan J. Tennenhouse, M.D., J.D., F.C.L.M., Attorneys' Medical Deskbook § 18:4 (4th ed.).

and lack substantial support in the record. First, the record belies the ALJ's assertion that those long-term treating physicians merely accepted plaintiff's subjective complaints at face value and reiterated her allegations. Dr. Sobol and Dr. Paveloff consistently documented clinical findings and objective data supporting their assessments in the numerous reports included in the record. [See AR 151-153, 157-158, 161-162, 168, 172, 184-186, 196, 199-201, 207-212, 219-226, 301-302]. In addition, Dr. Sobol enumerated and described in detail the objective evidence he relied on to support the diagnoses and conclusions in his permanent and stationary reports. [See AR 273, 306-307]. Dr. Sobol expressly stated that his October 2006 opinion was "[b]ased on the complete clinical picture," that is, on both the subjective and objective factors described in his report. [AR 305].

Second, the ALJ's statement that the assessments of Drs. Sobol and Paveloff are not "compatible with the record as a whole" is conclusory and unsupported by any analysis or by citation to specific medical evidence. [AR 21]. The "record as a whole," at least insofar as it concerns plaintiff's orthopedic impairments, is comprised largely of medical reports either generated by Drs. Sobol and Paveloff or explicitly relied upon by them. The ALJ only identifies one item of medical evidence that purportedly conflicts with those treating physicians' opinions, an August 2004 MRI of plaintiff's lumbosacral spine showing

> mild orthopedic conditions of L5-S1 disc degeneration with a shallow spondylotic ridge, no crossing or exiting nerve root compression, and mild face arthrosis; mild central canal narrowing at L4-5 secondary to a diffuse annular bulge; and mild diffuse annual bulge at L3-4 with no crossing or exiting nerve root compression and normal facet joints.

[AR 20 (citing AR 161-162)].

Dr. Sobol reviewed the August 2004 lumbosacral spine MRI scan, which he described in terms consistent with those used by the ALJ. Dr. Sobol relied on the abnormal lumbosacral spine MRI as one of the objective factors supporting the assessments in his permanent and stationary reports.[AR 271, 273, 303, 306-307]. He also relied, however, on other objective evidence, including, notably, an April 9, 2004 MRI study indicative of nerve root impingement. [AR 199-201, 303, 306]. That MRI study showed "severe left neural foraminal stenosis at C3-4 level impinging the left C4 nerve root" [AR 303], as well as disc bulge at C5-6 effacing the thecal sac, mild right neuroforaminal stenosis at C4-5, and moderate bilateral

1  neuroforaminal stenosis at C5-6, possibly impinging the exiting right C6 nerve root. [AR 199-201, 303].
2  In addition to those MRI studies, Dr. Sobol cited, among other things, abnormal cervical and lumbar spine
3  x-rays and electrodiagnostic nerve studies of the bilateral upper extremities showing "moderate abnormal
4  latencies in the distribution of sensory nerve roots at C6 right side." [AR 194-198].

5      The ALJ has not shown how the August 2004 lumbosacral spine MRI scan materially conflicts with
6  Dr. Sobol's opinion, nor has he demonstrated that the opinions of Drs. Sobol and Paveloff are inconsistent
7  with the record as a whole. Instead, the ALJ "merely states that the objective factors point toward an adverse
8  conclusion and makes no effort to relate any of these objective factors to any of the specific medical opinions
9  and findings he rejects. This approach is inadequate." Embrey v. Bowen, 849 F.2d 418, 421-422 (9th Cir.
10 1988)(explaining that an ALJ cannot simply "say that medical opinions are not supported by sufficient
11 objective findings or are contrary to the preponderant conclusions mandated by the objective findings . . .
12 . The ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain
13 why they, rather than the doctors', are correct.")(footnote omitted). Contrary to the ALJ's conclusory
14 assertion, Dr. Sobol and Dr. Paveloff buttressed their opinions with detailed clinical and objective findings,
15 and "the medical evidence appears to fully support the physicians' opinions . . . ." Embrey, 849 F.2d at 422
16 n.2.

17     Under these circumstances, the ALJ erred in rejecting the treating physicians' opinions in favor of
18 the conflicting opinion of Dr. Boeck, a consultative examining orthopedist, and a nonexamining state agency
19 physician. [AR 21]. Dr. Boeck examined plaintiff in December 2005. [AR 232-237]. On the basis of
20 positive examination findings consisting of limited range of motion of the lumbar spine, slight limitation
21 in motion of the cervical spine, and marked tenderness of the medial epicondyle of the right elbow, Dr.
22 Boeck opined that plaintiff could perform medium work, but would have difficulty with the right elbow with
23 repetitive motions. [AR 235-236]. Dr. Sobol also found that plaintiff had limited range of motion and
24 tenderness to palpation in the cervical and lumbar spine. [AR 171, 273, 301].

25     Dr. Boeck expressly stated in his report that his opinion was based solely on his physical examination

and observations of plaintiff.[4] [AR 236]. He did not review plaintiff's medical records, nor did he have the benefit of any diagnostic studies. The nonexamining state agency physician opined in March 2006 that plaintiff retains the RFC for medium work. That doctor presumably reviewed plaintiff's medical records, but there is no description of the evidence he or she relied upon. [AR 252-266].

In order for an examining physician's opinion to amount to substantial evidence, it must be based on "independent clinical findings," which "can be either (1) diagnoses that differ from those offered by another physician and that are supported by substantial evidence, or (2) findings based on objective medical tests that the treating physician has not herself considered." Orn, 495 F.3d at 632 (internal citations omitted). Dr. Boeck did not include any diagnoses, nor did he make findings based on objective medical tests that Drs. Sobol and Paveloff did not consider. Thus, Dr. Boeck's contrary opinion does not rise to the level of substantial evidence justifying rejection of the treating physicians' opinions.

Even if Dr. Boeck's contrary "opinion were 'substantial evidence,' § 404.1527 still requires deference to the treating physicians' opinions." Orn, 495 F.3d at 633. The treating physicians' opinions with respect to plaintiff's orthopedic impairments are well-supported, consistent with the record as a whole, reflect a longitudinal knowledge of plaintiff's condition gained from regular treatment appointments over a period of more than two years, and are based on their expertise in relevant medical specialties. Thus, their opinions were entitled to deference, and the ALJ's reasons for rejecting them are not legitimate or supported by substantial evidence in the record. See Orn, 495 F.3d at 632-634; see also 20 C.F.R. §§ 404.1527(d), 416.927(d).

The ALJ also said that even if he accepted the assessments of Drs. Sobol and Paveloff, neither of those physicians opined that plaintiff had impairments that would render her unable to work for at least twelve months. The ALJ further remarked that although plaintiff underwent treatment with those doctors from July 2004 to September 2005, there is no indication she was unable to work for a twelve-month period. [AR 21]. To support that conclusion, the ALJ pointed to the EDD forms completed by Drs. Paveloff and Sobol stating that plaintiff could not perform her usual duties from November 2005 until May 2006. [AR

---

[4] Thus, defendant's assertion that there is no evidence that Dr. Boeck did not review plaintiff's medical records is incorrect. [See JS 16 n.1].

20, 62-65].

The ALJ's reasoning is unconvincing. First, he misstated the record. Plaintiff did not stop treating with Drs. Sobol and Paveloff in September 2005. Dr. Sobol's permanent and stationary report indicates that he continued to treat her at least until September 2006. [AR 297-316]. Moreover, during the hearing on February 21, 2007, plaintiff testified that she was still seeing Dr. Sobol on a monthly basis. [AR 328-329].

Second, the ALJ inexplicably focused his durational analysis on the EDD disability forms completed by Drs. Paveloff and Sobol covering only the period from November 2005 through May 2006. [AR 20]. The ALJ disregarded the workers' compensation reports completed by Drs. Sobol and Paveloff indicating that plaintiff was temporarily totally disabled for most of the period from June 2004 through May 2005, and again from September 2005 until October 2006. [See AR 188, 208-210, 219-221, 229-230, 274-276]. See 42 U.S.C. § 423(d)(1)(A)(stating that a disabling impairment for social security disability purposes is one that "has lasted or can be expected to last for a continuous period of not less that 12 months").

Third, plaintiff's uncontradicted testimony indicated that although she returned to work with modified duties when Dr. Sobol released her to do so in September 2004 and in April 2005, she was unable to tolerate the physical demands of her job for more than a few weeks. In both instances, Dr. Sobol reinstated her temporary total disability status. [AR 47, 207, 219-221, 229-230, 340]. The brief periods during which plaintiff was released to modified work before again being placed on temporary total disability status do not disqualify her from satisfying the durational requirement. Cf. Lingenfelter v. Astrue, 504 F.3d 1028, 1038-1039 (9th Cir. 2007)(noting that "the Social Security Administration permits recipients of disability benefits to work on a trial basis without the trial work period adversely affecting their disability status," and holding, by analogy, that the ALJ erred in discrediting a claimant's subjective allegations of disability because the claimant returned to work for nine weeks and then quit again due to his impairments).

In sum, the ALJ committed legal error by failing to articulate specific, legitimate reasons based on substantial evidence for rejecting the treating source opinions of Dr. Sobol and Dr. Paveloff.

**Remedy**

The choice whether to reverse and remand for further administrative proceedings, or to reverse and simply award benefits, is within the discretion of the court. See Harman v. Apfel, 211 F.3d 1172, 1178 (9th Cir.) (holding that the district court's decision whether to remand for further proceedings or payment of

benefits is discretionary and is subject to review for abuse of discretion), cert. denied, 531 U.S. 1038 (2000). The Ninth Circuit has adopted the following test, known as the "Smolen test," to determine whether evidence should be credited and the case remanded for an award of benefits:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

Harman, 211 F.3d at 1178 (quoting Smolen, 80 F.3d at 1292).

Under Harman and Smolen, a remand for further proceedings is appropriate in this case to allow the ALJ to reevaluate plaintiff's RFC and to make appropriate findings. Because the ALJ's flawed analysis of the medical evidence tainted his credibility analysis, the ALJ also should make a new credibility determination on remand. See Bunnell v. Barnhart, 336 F.3d 1112, 1115-1116 (9th Cir. 2003)(applying the Smolen/Harman remand test to hold that while the ALJ did not properly reject the treating source evidence or the claimant's subjective complaints, several "outstanding issues" remain to be resolved, including "if she is disabled, the timing and duration of her disability," and whether the ALJ "must credit her testimony as true").

## Conclusion

For the reasons stated above, the Commissioner's decision is not supported by substantial evidence and does not reflect application of the proper legal standards. Accordingly, the Commissioner's decision is **reversed**, and this case is **remanded** to the Commissioner for further administrative proceedings consistent with this memorandum of decision.

**IT IS SO ORDERED.**

DATED: June 2, 2009

_____
ANDREW J. WISTRICH
United States Magistrate Judge